UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION AT KNOXVILLE

BRACKFIELD & ASSOCIATES PARTNERSHIP
a/k/a BRACKFIELD & ASSOCIATES, G.P., and
EUGENE BRACKFIELD, JR.,

    Plaintiffs,                                 No:

vs.

BRANCH BANKING AND TRUST COMPANY,       JURY OF 12 DEMANDED

    Defendant.

## COMPLAINT

Come Plaintiffs, Brackfield & Associates, G.P., and Eugene Brackfield, Jr., by counsel, and bring a civil cause of action against Defendant, Branch Banking and Trust Company, and for their complaint would show the Court a follows:

1) Plaintiff, Brackfield & Associates, G.P. ("Brackfield"), is a Tennessee general partnership with a principal place of business in Knox County, Tennessee.

2) Plaintiff, Eugene Brackfield, Jr. ("Buddy"), is a citizen and resident of Loudon County, Tennessee.

3) Buddy is the general partner of Brackfield.

4) Defendant, Branch Banking and Trust Company ("BB&T"), is a North Carolina corporation, authorized to transact business in the State of Tennessee, which may be served with process through its registered agent, C T Corporation System, at BB&T's registered address, 800 S. Gay St., Ste. 2021, Knoxville, TN 37929-9710.

5) This Court may exercise personal jurisdiction over BB&T upon one of more of the following bases: (1) BB&T maintains its registered agent within the State of Tennessee and within this District so as to subject BB&T to the general personal jurisdiction of this Court; (2) BB&T transacts business within the State of Tennessee and within this District on such a systematic basis so as to subject BB&T to the general personal jurisdiction of this Court; and (3) the transactions giving rise to the claims for relief set forth herein occurred in most substantial part in the State of Tennessee and within this District so as to subject BB&T to the specific personal jurisdiction of this Court.

6) This Court may exercise original subject-matter jurisdiction over Brackfield's claims for relief pursuant to the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401, *et seq.* (the "RFPA"), pursuant to 12 U.S.C. § 3416, which provides for jurisdiction in "an appropriate United States district court" with respect to actions brought pursuant to the RFPA, and given the facts as alleged herein, this Court is an appropriate United States District Court.

7) The Court may exercise supplemental jurisdiction over all state-law claims for relief set forth herein, pursuant to 28 U.S.C. § 1367, such claims being so related to claims pursuant to the RFPA that they form part of the same case or controversy under Article III of the United States Constitution.

8) For purposes of 12 U.S.C. § 3401(4), Brackfield consists of five or fewer partners.

9) For purposes of 12 U.S.C. § 3401(1), BB&T is a financial institution.

10) For purposes of 12 U.S.C. § 3401(5), Brackfield is a customer of BB&T.

11) Among the transactions rendering Brackfield a customer of BB&T is an open line of credit loan from BB&T to Brackfield shown in the business records of BB&T as "Account

Number 963004234-00040" (sometimes shown in the business records of BB&T as account number "963-0042434") (the "Line of Credit").

12) As a condition of successfully applying for and/or maintaining the Line of Credit, Brackfield, from time to time, provided BB&T with detailed information regarding its financial condition, including, but not limited to, spreadsheets showing the assets and liabilities of Brackfield (such spreadsheets being the "Financial Statements").

13) The Financial Statements contain information that a reasonably prudent business person would not voluntarily disclose to the general public.

14) The Financial Statements constitute financial records for purposes of 12 U.S.C. § 3401(2).

15) The Line of Credit is memorialized by, among other documents, a Loan Agreement dated November 13, 2003 (the "Loan Agreement").

16) A true copy of the Loan Agreement, as it exists in the business records of BB&T, is attached hereto as **Exhibit 1**.

17) BB&T drafted all documents Brackfield and Buddy executed in the course of applying for and/or maintaining the Line of Credit, including, but not limited to, the Loan Agreement and all contracts exhibited hereto which bear the signatures of an authorized representative of Brackfield and/or Buddy.

18) Neither Brackfield, nor Buddy, had any reasonable opportunity to participate in the drafting any documents Brackfield and Buddy executed in the course of applying for and/or maintaining the Line of Credit, including, but not limited to, the Loan Agreement and all contracts exhibited hereto which bear the signatures of an authorized representative of Brackfield and/or Buddy.

19) None of the provisions of the documents governing the Line of Credit were subject to any reasonable negotiation or revision by Brackfield or Buddy.

20) The Loan Agreement, as originally entered into by BB&T and Brackfield, did not require either Brackfield or Buddy to provide any collateral to secure repayment of funds advanced pursuant to the Loan Agreement.

21) At the request of BB&T, on August 25, 2009, Buddy executed a Guaranty Agreement with respect to the Line of Credit.

22) A true copy of the Guaranty Agreement, as it exists in the business records of BB&T, is attached hereto as **Exhibit 2**.

23) By agreeing to provide Buddy's personal guaranty with respect to the Loan Agreement, Brackfield specifically bargained for no real property asset of Brackfield serving as collateral to secure repayment of funds advanced pursuant to the Loan Agreement.

24) At the request of BB&T, on February 16, 2011, Brackfield executed a Security Agreement (the "Security Agreement") providing that certain non-real property assets of Brackfield would stand as collateral for repayment of funds advanced pursuant to the Loan Agreement.

25) A copy of the Security Agreement, as it exists in the business records of BB&T, is attached hereto as **Exhibit 3**.

26) The Security Agreement does not provide that any real property assets of Brackfield or Buddy would stand as collateral for repayment of funds advanced pursuant to the Loan Agreement.

27) With respect to the Security Agreement, Buddy, individually, and on behalf of Brackfield, specifically refused to provide any real property assets to stand as collateral for repayment of funds advanced pursuant to the Loan Agreement.

28) On March 8, 2011, BB&T filed a UCC financing statement with the Tennessee Secretary of State (the "Secretary"), to which BB&T attached unredacted information from the Financial Statements, showing, *inter alia*, a complete listing of the assets and liabilities of Brackfield (the "2011 UCC"), which the Secretary assigned document number 211-056336.

29) A copy of the 2011 UCC filed with the Secretary, redacted of any financial records is attached hereto as **Exhibit 4**.

30) A true copy of the 2011 UCC, unredacted and as BB&T filed it with the Secretary, is **Exhibit 5** to this Complaint, but is being uploaded to ECF subject to a contemporaneous motion to file the same under seal.

31) On May 15, 2011, BB&T recorded the 2011 UCC financing statement with the Register of Deeds for Knox County, Tennessee (the "Register"), to which BB&T attached unredacted information from the Financial Statements, showing, *inter alia*, a complete listing of the assets and liabilities of Brackfield, which the Register assigned instrument number 201105160066400.

32) A true copy of the 2011 UCC, unredacted and as BB&T recorded it with the Register, is **Exhibit 6** to this Complaint, but is being uploaded to ECF subject to a contemporaneous motion to file the same under seal.

33) A copy of the 2011 UCC recorded with the Register, redacted of any financial records, is attached hereto as **Exhibit 7**.

34) BB&T is already in possession of the 2011 UCC, as BB&T filed it with the Secretary and recorded it with the Register, in its unredacted form, to the end that it may answer this Complaint, notwithstanding the unredacted 2011 UCC being filed under seal.

35) Pursuant to, *inter alia*, Tennessee Code Annotated sections 47-9-501, *et seq.*, and 66-26-102, upon BB&T filing the 2011 UCC with the Secretary and recording the 2011 UCC with the Register, the 2011 UCC became a public record to which the entire world had free and open access.

36) The entire world includes government authorities, as such term is defined by 12 U.S.C. § 3401(3).

37) BB&T's filing of the 2011 UCC with the Secretary and recordation of the 2011 UCC with the Register constitutes BB&T's provision of access to financial records to a government authority for purposes of 12 U.S.C. § 3403(a).

38) BB&T's provision of access to the unredacted information from the Financial Statements in the 2011 UCC to a government authority constitutes the unlawful disclosure of financial records for purposes of the RFPA (such provision of access hereinafter being, "BB&T's 2011 disclosure").

39) Pursuant to Tennessee law, the recording of a UCC financing statement with a register of deeds, such as the Register, other than with respect to fixtures, uncut timber, or minerals, is not the appropriate vehicle for perfecting a security interest in real property or proceeds deriving from the sale of real property.

40) Neither the Security Agreement nor the 2011 UCC purports to vest BB&T with a security interest in any fixtures, uncut timber, or minerals.

41) BB&T's recordation of the 2011 UCC with the Register does not perfect a valid security interest in any real property described therein.

42) To the extent that it was necessary or possible for BB&T to perfect a security interest in any personal property described in the 2011 UCC, such perfection occurred upon filing with the Secretary, and the recording of the same with the Register was unnecessary and superfluous.

43) Recording the 2011 UCC with the Register afforded BB&T with no greater security than BB&T enjoyed on account of filing the same with the Secretary.

44) BB&T's inclusion of unredacted information from the Financial Statements in the filing of the 2011 UCC with the Secretary afforded BB&T with no greater security than BB&T would have enjoyed had such filing not included information from the Financial Statements, and the inclusion of such information in the 2011 UCC was unnecessary and superfluous.

45) BB&T's recordation of the 2011 UCC with the Register is not incident to the perfection of a security interest in any of the real property described therein.

46) BB&T's filing of the 2011 UCC with the Secretary, insofar as it included unredacted information from the Financial Statements, is not incident to the perfection of a security interest in any of the real property described therein.

47) None of the exceptions to a violation of the RFPA contained in the RFPA exculpate BB&T's 2011 disclosure.

48) Pursuant to 12 U.S.C. § 3417(a)(1), Brackfield is entitled to recover statutory damages of $100 from BB&T on account of BB&T's 2011 disclosure via filing the 2011 UCC with the Secretary.

49) Pursuant to 12 U.S.C. § 3417(a)(1), Brackfield is entitled to recover statutory damages of $100 from BB&T on account of BB&T's 2011 disclosure via recording the 2011 UCC with the Register.

50) Brackfield has suffered actual damages as a result of BB&T's 2011 disclosure.

51) Pursuant to 12 U.S.C. § 3417(a)(2), Brackfield is entitled to recover its actual damages from BB&T for BB&T's 2011 disclosure.

52) BB&T's 2011 disclosure constitutes a breach of a statutory duty in violation of the Tennessee Financial Records Privacy Act, Tenn. Code Ann. § 45-10-101, *et seq.*

53) BB&T's 2011 disclosure constitutes a breach of a statutory duty in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

54) BB&T's 2011 disclosure constitutes a breach of a statutory duty in violation of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.*

55) BB&T's 2011 disclosure was willful or intentional for purposes of 12 U.S.C. § 3417(a)(3).

56) Pursuant to 12 U.S.C. § 3417(a)(3), Brackfield is entitled to recover punitive damages from BB&T for BB&T's 2011 disclosure.

57) Not until 2013 did Brackfield discover BB&T's 2011 disclosure.

58) Shortly after discovering BB&T's 2011 disclosure, Brackfield informed BB&T of the presence of the unredacted financial information from the Financial Statements in the public records of the Secretary and the Register.

59) Also in 2013, Brackfield discovered that the 2011 UCC purported to encumber assets beyond those described in the Security Agreement.

60) The 2011 UCC included in its description of collateral substantially all of Brackfield's real property assets.

61) BB&T breached contracts with Brackfield relating to the Line of Credit by filing the 2011 UCC with the Secretary and recording the 2011 UCC with the Register, inasmuch as the 2011 UCC purported to claim security interests in assets beyond those described in the Security Agreement.

62) A commercially reasonable buyer of real property will not purchase any real property asset in which a lender appears to purport to claim a security interest, regardless of the facial invalidity of the claim, without release of the apparent or purported claim.

63) A commercially reasonable title insurer will not insure, without exception, title to any real property in which a lender appears to purport to claim a security interest, regardless of the facial invalidity of the claim.

64) A commercially reasonable buyer of real property will not purchase real property unless able to procure title insurance without exception for apparent or purported security interests with respect to such real property.

65) A commercially reasonable commercial lender requiring a first priority lien against real property as a condition to lending will not advance funds against property in which another lender has made an apparent or purported record claim to a security, regardless of the facial invalidity of the claim without release of the claim.

66) A commercially reasonable commercial lender requiring a first priority lien against real property to secure a loan will not accept real property as collateral unless able to procure title insurance with respect to such real property without exception for any other apparent or purported claim of any security interest in the same property.

67) An effect of BB&T filing the 2011 UCC with the Secretary and BB&T recording the 2011 UCC with the Register was to adversely affect Brackfield's creditworthiness.

68) The adverse effect upon Brackfield's creditworthiness resulting from BB&T filing of the 2011 UCC with the Secretary and BB&T recording the 2011 UCC with the Register resulted in Brackfield being unable to obtain credit and/or Brackfield being unable to obtain credit on terms comparable or as favorable to those that would have been extended to Brackfield in the absence of BB&T filing the 2011 UCC with the Secretary and BB&T recording the 2011 UCC with the Register.

69) At all times pertinent to the instant action, Buddy's principal asset has been his partnership interest in Brackfield.

70) An effect of BB&T filing the 2011 UCC with the Secretary and BB&T recording the 2011 UCC with the Register was to adversely affect Buddy's creditworthiness.

71) The adverse effect upon Buddy's creditworthiness resulting from BB&T filing the 2011 UCC with the Secretary and BB&T recording of the 2011 UCC with the Register resulted in Buddy being unable to obtain credit and/or Buddy being unable to obtain credit on terms comparable or as favorable to those that would have been extended to Buddy in the absence of BB&T filing of the 2011 UCC with the Secretary and BB&T recording of the 2011 UCC with the Register.

72) Shortly after discovering that the 2011 UCC purported to encumber assets beyond those described in the Security Agreement, Brackfield informed BB&T of BB&T's violations of the Security Agreement.

73) BB&T undertook some effort to correct the record with respect to assets purported to be encumbered by the 2011 UCC by filing an amended UCC financing statement (the "2013 UCC") with the Secretary, which the Secretary assigned document number 113-013479.

74) The 2013 UCC contains financial records for purposes of the RFPA.

75) A true copy of the 2013 UCC, unredacted and as BB&T filed it with the Secretary is **Exhibit 8** to this Complaint, but is being uploaded to ECF subject to a contemporaneous motion to file the same under seal.

76) On March 22, 2013, BB&T recorded the 2013 UCC with the Register, which the Register assigned instrument number 201303220061945.

77) A true copy of the 2013 UCC, unredacted and as BB&T recorded it with the Register, is **Exhibit 9** to this Complaint, but is being uploaded to ECF subject to a contemporaneous motion to file the same under seal.

78) Pursuant to, *inter alia*, Tennessee Code Annotated sections 47-9-501, *et seq.*, and 66-26-102, upon BB&T filing of the 2013 UCC with the Secretary and BB&T recording the 2013 UCC with the Register, the 2013 UCC became a public record to which the entire world had free and open access (the "financial records," as such term is defined in 12 U.S.C. § 3401(2), contained in the 2013 UCC being "BB&T's 2013 disclosure").

79) A copy of the 2013 UCC filed with the Secretary, redacted of any financial records is attached hereto as **Exhibit 10**.

80) A copy of the 2013 UCC filed recorded with the Register, redacted of any financial records is attached hereto as **Exhibit 11**.

81) BB&T is already in possession of the 2013 UCC, as BB&T filed it with it the Secretary and recorded it with the Register, in its original unredacted form, to the end that it may answer this Complaint, notwithstanding the unredacted 2013 UCC being filed under seal.

82) BB&T's recordation of the 2013 UCC with the Register is not incident to the perfection of a security interest in any of the real property described therein.

83) BB&T's filing of the 2013 UCC with the Secretary, insofar as it included unredacted financial records, is not incident to the perfection of a security interest in any of the real property described therein.

84) None of the exceptions to a violation of the RFPA contained in the RFPA exculpate BB&T's 2013 disclosure.

85) Pursuant to 12 U.S.C. § 3417(a)(1), Brackfield is entitled to recover statutory damages of $100 from BB&T on account of BB&T's 2013 disclosure via filing the 2013 UCC with the Secretary.

86) Pursuant to 12 U.S.C. § 3417(a)(1), Brackfield is entitled to recover statutory damages of $100 from BB&T on account of BB&T's 2013 disclosure via recording the 2013 UCC with the Register.

87) Brackfield has suffered actual damages as a result of BB&T's 2013 disclosure.

88) Pursuant to 12 U.S.C. § 3417(a)(2), Brackfield is entitled to recover its actual damages from BB&T for BB&T's 2013 disclosure.

89) BB&T's 2013 disclosure constitutes a breach of a statutory duty in violation of the Tennessee Financial Records Privacy Act, Tenn. Code Ann. § 45-10-101, *et seq.*

90) BB&T's 2013 disclosure constitutes a breach of a statutory duty in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

91) BB&T's 2013 disclosure constitutes a breach of a statutory duty in violation of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, *et seq.*

92) BB&T's 2013 disclosure was willful or intentional for purposes of 12 U.S.C. § 3417(a)(3).

93) Pursuant to 12 U.S.C. § 3417(a)(3), Brackfield is entitled to recover punitive damages from BB&T for BB&T's 2013 disclosure.

94) The 2013 UCC included in its description of collateral several of Brackfield's real property assets.

95) BB&T breached contracts relating to the Line of Credit by recording the 2013 UCC with the Register, inasmuch as by the recordation of the 2013 UCC with the Register, BB&T has ostensibly purported to claim security interests in assets beyond those described in the Security Agreement, *i.e.*, security interests in real property of Brackfield.

96) An effect of BB&T's recordation of the 2013 UCC with the Register has been to adversely affect Brackfield's creditworthiness.

97) The adverse effect upon Brackfield's creditworthiness resulting from the recordation of the 2013 UCC with the Register has been Brackfield being unable to obtain credit and/or Brackfield being unable to obtain credit on terms comparable or as favorable to those that would have been extended to Brackfield in the absence of the recordation of the 2013 UCC with the Register.

98) An effect of the recordation of the 2013 UCC with the Register has been to adversely affect Buddy's creditworthiness.

99) The adverse effect upon Buddy's creditworthiness resulting from the recordation of the 2013 UCC with the Register resulted in Buddy being unable to obtain credit and/or Buddy being

unable to obtain credit on terms comparable or as favorable to those that would have been extended to Buddy in the absence of the recordation of the 2013 UCC with the Register.

100) BB&T breached contracts with Brackfield relating to the Line of Credit by filing recording the 2013 UCC with the Register, inasmuch as the 2013 UCC purported to claim security interests in assets beyond those described in the Security Agreement.

101) Brackfield has suffered damages on account of BB&T's breaches of contract set forth above.

102) Brackfield's damages are the proximate result of BB&T's breach of contract.

103) Buddy is an intended third-party beneficiary with respect to the documents that constitute Brackfield's Line of Credit with BB&T.

104) Buddy has suffered damages on account of BB&T's breach of contract.

105) Buddy's damages are the proximate result of BB&T's breach of contract.

**Plaintiffs demand a jury of 12 to decide all issues so triable.**

WHEREFORE, Plaintiffs pray that process issue for Defendant, requiring Defendant to answer this Complaint, and upon proceedings as may be appropriate, that the Court enter judgment against Defendants and in favor of Plaintiffs, awarding statutory, actual, and punitive damages, plus attorney fees, pursuant to the RFPA; and actual damages, plus any contractual attorney fees, for breach of contract, not to exceed the total amount of $1,000,000.00.

This the 6th day of November, 2014.

/s/ Matthew A. Grossman
Matthew A. Grossman (BPR No. 22107)
Taylor D. Forrester (BPR No. 27228)
**FRANTZ, MCCONNELL & SEYMOUR, LLP**
P.O. Box 39
Knoxville, TN 37901
(865) 546-9321
Attorneys for Plaintiffs