## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: April 14, 2016

Mr. Matthew Adam Grossman
Frantz, McConnell & Seymour
550 W. Main Avenue
Suite 500
Knoxville, TN 37901

Ms. Summer H. McMillan
Mr. Richard Baxter Gossett
Baker Donelson
265 Brookview Centre Way
Suite 600
Knoxville, TN 37919

Re: Case No. 15-6092, *Brackfield & Assoc Partnership, et al v. Branch Banking and Trust Co*
Originating Case No. : 3:14-cv-00524

Dear Counsel:

The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Renee M. Jefferies
Case Manager
Direct Dial No. 513-564-7021

cc:  Ms. Debra Poplin

Enclosure

Mandate to issue


**NOT RECOMMENDED FOR PUBLICATION**
File Name: 16a0209n.06

No. 15-6092

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| BRACKFIELD & ASSOCIATES PARTNERSHIP, aka Brackfield & Associates, G.P.; EUGENE BRACKFIELD, JR., <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> BRANCH BANKING AND TRUST COMPANY, <br><br> Defendant-Appellee. | FILED <br> Apr 14, 2016 <br> DEBORAH S. HUNT, Clerk <br><br> ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |

BEFORE: DAUGHTREY, MOORE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

The Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401 *et seq.*, limits the ability of the federal government to obtain customers' financial information from banks. Plaintiffs contend defendant violated the RFPA by filing a listing of their assets and debts in the public record, therefore providing the "entire world" with "free and open access" to the financial information. Because the "entire world" necessarily includes the federal government, plaintiffs conclude defendant's actions ran afoul of the RFPA. We agree with the district court that plaintiffs do not satisfy Article III's injury in fact requirement and therefore affirm.

I.

No. 15-6092
*Brackfield & Associates P'ship, et al. v. Branch Banking and Tr. Co.*

Brackfield & Associates Partnership (owned by its general partner, Eugene Brackfield, collectively, "Brackfield") is a customer of defendant Branch Banking and Trust Company ("BB&T"). BB&T granted Brackfield an open line of credit on the condition that Brackfield provide BB&T with "detailed information regarding its financial condition, including . . . spreadsheets showing the assets and liabilities of Brackfield." These spreadsheets "contain information that a reasonably prudent business person would not voluntarily disclose to the general public."

On March 8, 2011, BB&T filed a UCC financing statement with the Tennessee Secretary of State. The filing attached "a complete listing of the assets and liabilities of Brackfield." BB&T also recorded the same UCC financing statement and listing with the Register of Deeds for Knox County, Tennessee. Brackfield discovered these filings in 2013. After Brackfield informed BB&T that it had placed its assets and liabilities into the public record, BB&T "undertook some effort to correct the record . . . by filing an amended UCC financing statement" with the Secretary of State. On March 22, 2013, BB&T also recorded this amended financing statement with the Register. These filings still contained sensitive financial records.

Brackfield filed suit, alleging violations of the RFPA and breach of contract. Key to Brackfield's theory is that these filings "became a public record to which the entire world had free and open access," which necessarily includes "Government authorities" as defined by the RFPA. As a result of its financial records now in the public domain, Brackfield contends the filings adversely affected its creditworthiness: Brackfield was "unable to obtain credit and/or . . . unable to obtain credit on terms comparable or as favorable to those that would have been extended to Brackfield in the absence of" these filings. It also requests statutory and other damages.

No. 15-6092
*Brackfield & Associates P'ship, et al. v. Branch Banking and Tr. Co.*

The district court dismissed plaintiffs' RFPA claim, reasoning that Brackfield had not sufficiently alleged Article III standing—it had neither shown a concrete and particularized injury, nor drawn a causal connection between its alleged injury and the conduct complained of. It then declined to exercise supplemental jurisdiction over Brackfield's remaining state law claim. Brackfield appeals this dismissal.

## II.

Whether a party has standing is a question of law that we review de novo. *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012). At the pleading stage, we decide standing questions by examining the complaint and any accompanying materials. *Id.* "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992)). To satisfy the Constitution's standing requirement, a party must establish that:

> (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Fieger v. Michigan Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009) (citation omitted).

## III.

The RFPA has its origins in the Supreme Court's decision in *United States v. Miller*, where the Court found there was not a "legitimate expectation of privacy concerning the information kept in bank records." 425 U.S. 435, 442 (1976). Enacted in response, the RFPA "protect[s] the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity by requiring federal

-3-

No. 15-6092
*Brackfield & Associates P'ship, et al. v. Branch Banking and Tr. Co.*

agencies to follow established procedures when seeking a customer's financial records." *Anderson v. La Junta State Bank*, 115 F.3d 756, 758 (10th Cir. 1997) (citation omitted). It "outlines numerous restrictions on the disclosure of financial records held by bank employees and federal regulatory authorities[, and specifically] . . . imposes an affirmative duty on . . . banking officials to safeguard the financial records of individuals utilizing the services of banks." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983).

The RFPA proscribes both financial institution and governmental conduct. The pertinent language governing financial institutions is as follows:

> No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter.

§ 3403(a). Relatedly, § 3402 applies to governmental conduct, and provides (with exceptions not applicable here) that:

> No Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution.

The RFPA defines "Government authority" as "any agency or department of the United States, or any officer, employee, or agent thereof." § 3401(3). And finally, it grants a private right of action to customers of financial institutions whose financial records or information is obtained or disclosed in violation of the act. § 3417(a).

Brackfield anchors its injury in fact only in BB&T's alleged violation of the RFPA, expressly conceding it does not "assert 'constitutional standing'" beyond the RFPA's statutory grant. "Congress 'has the power to create new legal rights, [including] right[s] of action whose only injury-in-fact involves the violation of that statutory right.'" *Beaudry v. TeleCheck Servs.,*

-4-

*Inc.*, 579 F.3d 702, 707 (6th Cir. 2009) (quoting *In re Carter*, 553 F.3d 979, 988 (6th Cir. 2009)) (alterations in original).[1]  "[O]nce a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) (internal quotation marks omitted). "*Sierra Club* [*v. Morton*, 405 U.S. 727 (1972),] instructs courts that 'the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.'" *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644, 659 n.19 (6th Cir. 2007) (quoting *Sierra Club*, 405 U.S. at 732). "Thus the analysis of whether the plaintiffs have standing to bring a statutory claim necessarily requires a determination of whether the plaintiffs were injured under the relevant statute." *Id.*

But here, Brackfield has not plausibly alleged an invasion of his statutory rights under the RFPA. *See White v. United States*, 601 F.3d 545, 551–52 (6th Cir. 2010). Brackfield asks that we focus on the RFPA's "access to" language, and broadly read it as authorizing liability when a financial institution "provide[s] the government with the *means* to obtain . . . financial records, without regard to whether the government took advantage of that opportunity." We disagree for three main reasons.

First, "[t]he most salient feature of the [RFPA] is the narrow scope of the entitlements it creates." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984). Were we to adopt Brackfield's approach to statutory construction, we would greatly broaden its interpretation.

---

[1] The parameters of this power are currently up for debate. *See Robins v. Spokeo, Inc.*, 742 F.3d 409, 413–14 (9th Cir. 2014) ("[A]lleged violations of . . . statutory rights are sufficient to satisfy the injury-in-fact requirement of Article III.") (citing *Beaudry*, 579 F.3d at 707), *cert. granted*, 82 U.S.L.W. 3689 (April 27, 2015) (No. 13-1339).

Second, Brackfield's view that disclosure to the public at large constitutes "providing Government authorities access" would render § 3403(a)'s "provide to" language meaningless. *See GGNSC Springfield LLC v. N.L.R.B.*, 721 F.3d 403, 410 (6th Cir. 2013) (when interpreting statutes, we avoid readings to render terms superfluous). And third, it would require us to read the "access to" term in § 3403 differently than all of its other uses across the statute, which make clear that "access to" relates to Government authorities obtaining or attempting to obtain financial records. *See* §§ 3402 (prohibiting Government authorities from obtaining financial records unless, among others, the records "are disclosed in response" to subpoenas, search warrants, etc.), 3409(c) (governing notice requirements for "[w]hen access to financial records is obtained"), 3413(h)(5) (providing that upon notice that financial records are being obtained by Government authorities relating to a potential civil, criminal, or regulatory violation, "such agency or department may then seek access to the records"), 3414(a)(3) (prohibiting financial institutions from disclosing the fact "that the Government authority or the Secret Service has sought or obtained access to a customer's financial records" in cases of national security). But it is well-settled that, generally speaking, "identical words used in different parts of the same act are intended to have the same meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2005 (2012) (citation and internal quotation marks omitted).

Brackfield's imaginative statutory argument to the contrary fails Article III's concrete and particular hurdle. It does not allege that BB&T "provided" its financial information to a "Government authority." Nor does it allege that a "Government authority" possesses its financial records. Rather, it banks on the suppositional notion that by placing Brackfield's financial statements into the public record, BB&T provided "Government authorities" with access to its financial records in violation of § 3403. This speculative pleading falls short of

No. 15-6092
*Brackfield & Associates P'ship, et al. v. Branch Banking and Tr. Co.*

alleging BB&T actually provided any Government authority with access to Brackfield's financial information in violation of the RFPA. Because Brackfield's complaint "rest[s] on a string of actions the occurrence of which is merely speculative," it thus falls within the realm of cases condemned by conjecture and hypothetical. *Fieger*, 553 F.3d at 967 (citation omitted); *see Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013); *Am. Civil Liberties Union*, 493 F.3d at 673; *Stein v. Bank of Am. Corp.*, 540 F. App'x 10, 10–11 (D.C. Cir. 2013) (per curiam) (allegation that "bank . . . may have exposed [plaintiffs' financial] records to possible surveillance by the U.S. government" by sending their records oversees was "conjectural," "highly speculative," and did not sufficiently state that the bank "provided their financial records to the government" in order to assert an injury under the RFPA); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam) ("To establish an injury in fact—and thus, a personal stake in [RFPA] litigation—[plaintiff] need only establish that its information was obtained by the government.").

## IV.

Because Brackfield has failed to establish injury in fact, we affirm the district court.